## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**CHARLES PITT, ET AL.**                                          **CIVIL ACTION**

**VERSUS**                                                        **NO. 15-360**

**CHIEF EARL WEAVER, ET AL.**                                     **SECTION "B"(1)**

### REPORT AND RECOMMENDATION

Plaintiffs, Charles Pitt, Lee Kentrell Jackson, and Jamal Bowe, state pretrial detainees, filed this civil action pursuant to 42 U.S.C. § 1983 against Chief Earl Weaver, Sheriff Marlin N. Gusman, Major Carlos Louque, Major Bonita Pittman, and the Orleans Parish Jail.  In this lawsuit, plaintiffs challenge the conditions of their confinement within the Orleans Parish Prison system.  For the following reasons, it is recommended that plaintiffs' claims be **DISMISSED**.

### I.  Jamal Bowe

When the instant complaint was filed, Jamal Bowe neither paid the required filing fee nor submitted an application to proceed *in forma pauperis*.  The Clerk of Court therefore issued a "Notice of Deficient Filing" advising Bowe that he must either pay the filing fee or submit a pauper application.[1]  He failed to respond to that notice.

On March 11, 2015, the undersigned United States Magistrate Judge issued an order directing Bowe to pay the filing fee or to submit a completed pauper application on or before April 1, 2015.  He was warned that if he failed to comply with that order, the undersigned would recommend that his claims be dismissed.[2]  Bowe failed to comply with that order.

---

[1]   Rec. Doc. 5.

[2]   Rec. Doc. 10.

Additionally, this Court's Local Rules provide:  "Each attorney and pro se litigant has a continuing obligation promptly to notify the court of any address or telephone number change." Local Rule 11.1.  It is clear that Bowe was in fact aware of that obligation, in that his complaint included the following declaration:  "I understand that if I am released or transferred, it is my responsibility to keep the Court informed of my whereabouts and failure to do so may result in this action being dismissed with prejudice."[3]  This Court's Local Rules further provide:

> The failure of an attorney or pro se litigant to notify the court of a current e-mail or postal address may be considered cause for dismissal for failure to prosecute when a notice is returned to the court because of an incorrect address and no correction is made to the address for a period of 35 days from the return.

Local Rule 41.3.1.

More than thirty-five days ago, mail sent to Bowe at the Templeman Unit of the Orleans Parish Prison system, his address of record, was returned by the United States Postal Service as undeliverable because he was no longer in custody.[4]  All subsequent mail sent to him at that address has likewise been returned as undeliverable.[5]  He has not informed the Court of his current address.

In light of the foregoing, it is appropriate to dismiss Bowe's claims for want of prosecution. The authority of a federal trial court to dismiss a plaintiff's action because of failure to prosecute is clear.  Link v. Wabash R.R., 370 U.S. 626 (1962); McCullough v. Lynaugh, 835 F.2d 1126 (5th Cir. 1988).  The Federal Rules of Civil Procedure specifically provide that a court may, in its discretion,

---

[3]   Rec. Doc. 11, p. 5.

[4]   Rec. Docs. 12, 13, and 14.

[5]   Rec. Docs. 17, 19, and 20.

dismiss a plaintiff's action for failure to prosecute or for failure to comply with the Federal Rules of Civil Procedure or any order of the court. Fed. R. Civ. P. 41(b). The Court's power to dismiss for want of prosecution should be used sparingly, although it may be exercised *sua sponte* whenever necessary to achieve the orderly and expeditious disposition of cases. Ramsay v. Bailey, 531 F.2d 706, 707 (5th Cir. 1976).

Because Bowe is proceeding *pro se*, the Court need only consider his conduct in determining whether dismissal is proper under Rule 41(b). As noted, Bowe has neither paid the required filing fee nor submitted a completed pauper application. He has also failed to keep the Court apprised of his current address, and his whereabouts are unknown. For these reasons, the Court is unable to advance his claims on the docket. Accordingly, Bowe's claims should be dismissed for failure to prosecute.

## II.  Charles Pitt and Lee Kentrell Jackson

The remaining plaintiffs, Charles Pitt and Lee Kentrell Jackson, requested and were granted leave to pursue their claims *in forma pauperis*. Although they have properly prosecuted their claims, the claims should nevertheless be dismissed for the following reasons.

### A.  Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks

redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §

1915A(a).[6]  Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

> Additionally, with respect to actions filed *in forma pauperis*, federal law similarly provides:
>
> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
>
> > (i) is frivolous or malicious;
> > (ii) fails to state a claim on which relief may be granted; or
> > (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27

F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the

Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory,

but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those

claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327

(1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

---

[6]   "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).  The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing the complaint[7] and fully considering the Spears hearing testimony of Pitt and Jackson,[8] the undersigned recommends that, for the following reasons, their claims be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

---

[7]    The court must liberally construe a *pro se* civil rights complaint.  See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

[8]    In order to better understand the factual bases of their claims, the Court held Spears hearings in this matter with Pitt and Jackson on April 16, 2015.  See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998).  The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement.  Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).  Spears hearing testimony becomes a part of the total filing by the *pro se* applicant.  Id.

### B.  Plaintiffs' Claims

In their complaint, Pitt and Jackson assert numerous claims challenging the conditions of their confinement within the Orleans Parish Prison system.  It is clear that "the Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment."  Collins v. Ainsworth, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted).  Nevertheless, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of mere inconveniences.  Further, such judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees.  Bell v. Wolfish, 441 U.S. 520, 539 n.21 (1979); Ruiz v. El Paso Processing Center, 299 Fed. App'x 369, 371 (5th Cir. 2008).  As explained below, it is apparent that plaintiffs' complaints regarding the conditions of their confinement concern inconveniences which do not constitute "punishment" or otherwise rise to the level of constitutional violations.

### 1.  Lack of Beds/Bedding

Plaintiffs first complain that they were without beds for brief periods of time.  At the Spears hearings, Pitt estimated that he was without a bed for approximately sixteen days, while Jackson estimated that he was without a bed for approximately one week.  When asked about this claim, both plaintiffs acknowledged that they in fact had mattresses during those periods; however, they had to place their mattresses on the floor because there were no available bunks.  Even if that is true, these claims are not actionable because the Constitution does not require elevated beds.  See Mann v. Smith, 796 F.2d 79, 85 (5th Cir. 1986); accord Sanders v. Kingston, 53 Fed. App'x 781, 783 (7th Cir.

6

2002); Finfrock v. Jordan, No. 95-3395, 1996 WL 726426, at *1 (7th Cir. Dec. 6, 1996); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985); McCarty v. McGee, Civ. Action No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008).  As a result, plaintiffs' claims that they had to sleep on mattresses on the floor when there were no available bunks should be dismissed as frivolous.  See, e.g., Bean v. Pittman, Civ. Action No. 14-2210, 2015 WL 350284, at *4 (E.D. La. Jan. 26, 2015); Jones v. Ford, Civ. Action No. 2:08cv176, 2009 WL 235355, at *2 (S.D. Miss. Jan. 30, 2009).

Pitt also alleges that he had no blanket for the sixteen days during which he was sleeping on the floor.[9]  However, that claim must likewise be dismissed because "a temporary, non-punitive denial of a blanket is not sufficiently egregious to violate the Constitution."  Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *5 (E.D. La. Mar. 19, 2015); accord Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); McAllister v. Strain, Civ. Action No. 08-5174, 2009 WL 500560, at *2-3 (E.D. La. Feb. 25, 2009).

## 2.  Plumbing Problems/Lack of Hot Water

Plaintiffs next complain that there are frequent plumbing problems, such as leaks and sewage backups, and that they were without access to hot water for several days.  Both plaintiffs acknowledge that jail officials try to effect the necessary repairs, although their success is limited and temporary as a result of the age of the building.

While such plumbing problems are undoubtedly annoying, they similarly are not actionable under federal law because the Constitution does not protect inmates from those types of "life's

_____

[9]    At the Spears hearing, Jackson testified that he was not denied a blanket.

occasional inconveniences." Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982); Maddox, 2015 WL 1274081, at *4; Scott v. Gusman, Civ. Action No. 10-2706, 2011 WL 666851, at *7 (E.D. La. Feb. 14, 2011); Rue v. Gusman, Civ. Action No. 09-6480, 2010 WL 1930936, at *5 (E.D. La. May 11, 2010). As a result, nuisances such as "[l]leaky toilets and puddles are unpleasant but not unconstitutional." Smith v. Melvin, No. 95-2531, 1996 WL 467658, at *2 (7th Cir. July 26, 1996); accord Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010); Wilkerson v. Champagne, Civ. Action No. 03-1754, 2003 WL 22872106, at *3 (E.D. La. Nov. 28, 2003).

Plaintiffs' claims that they went without hot water for several days likewise fail because inmates have no constitutional right to hot water. Mann v. Smith, 796 F.2d 79, 85 (5th Cir. 1986); Johnson v. Desoto County Sheriff Department, Civ. Action No. 13cv43, 2013 WL 3944284, at *2 (N.D. Miss. July 31, 2013).

### 3.  Undercooked and Freezer-Burnt "Riblets"

Plaintiffs next allege that they were served undercooked and freezer-burnt "riblets" on two or three occasions. At the Spears hearings, however, they acknowledged that they had other edible food on the food tray on those occasions and conceded that they are served a total of three meals per day.

As an initial matter, it must be noted that the constitutionality of prison food is not judged by its gastronomic appeal. See, e.g., Billizone v. Jefferson Parish Correctional Center, Civ. Action No. 14-2594, 2015 WL 966149, at *9 (E.D. La. Mar. 4, 2015); Cummings v. Gusman, Civ. Action No. 09-144, 2009 WL 1649737, at *3 n. 11 (E.D. La. June 9, 2009). Rather, the Constitution

requires only that jail meals prove "reasonably adequate food" with "sufficient nutritional value to preserve health." Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996) ("To comply with the Constitution, inmates must receive 'reasonably adequate' food."); Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977) ("A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required.").  Moreover, the United States Fifth Circuit Court of Appeals has noted that "[e]ven on a regular, permanent basis, two meals a day may be adequate." Berry v. Brady, 192 F.3d 504, 507 (5th Cir. 1999).  Therefore, even if a single inedible item is occasionally served as part of one of the three daily meals, that fails to rise to the level of a constitutional deprivation.

### 4.  Broken Air Conditioning

Plaintiffs also allege that, despite attempted repairs, the air conditioning system is often broken and the fans provided do not sufficiently relieve the uncomfortable conditions.  Although it cannot be doubted that exposure to *extreme* temperatures is actionable in some circumstances, plaintiffs' allegations fall far short of what is required to establish a constitutional violation, especially in that there is no contention that they suffered from disabilities which made them particularly vulnerable to harm as a result of uncomfortably warm conditions.  See, e.,g., Johnson v. Texas Board of Criminal Justice, 281 Fed. App'x 319, 320 (5th Cir. 2008); Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995); Scott v. Gusman, Civ. Action No. 10-2706, 2011 WL 666851, at *7 (E.D. La. Feb. 14, 2011); LeBlanc v. Gusman, Civ. Action No. 09-2786, 2010 WL 148290, at *3 (E.D. La. Jan. 12, 2010).  Accordingly, these claims should likewise be dismissed.

### 5.  Laundry Service

Plaintiffs next challenge the adequacy of the jail's laundry service.  At the <u>Spears</u> hearings, they testified that they were initially provided with laundry service only approximately twice per month, although laundry is now done more frequently.[10]  They also stated some of their items were lost by the laundry.  Specifically, Jackson testified that his thermal underwear was lost by the laundry on one occasion, while Pitt's lost items were state-issued apparel.

These allegations fail to state a nonfrivolous claim.  The federal constitution does not require that prisoners have a change of clean clothing available on a daily basis.  <u>See</u> <u>Alberti v. Klevenhagen</u>, 46 F.3d 1347, 1367 (5th Cir. 1995); <u>Florer v. Schrum</u>, No. C11-5135, 2013 WL 1431651, at *9 (W.D. Wash. Feb. 13, 2013), <u>adopted</u>, 2013 WL 1432157 (W.D. Wash. Apr. 9, 2013); <u>Georges v. Ricci</u>, Civ. No. 07-5576, 2007 WL 4292378, at *6 (D.N.J. Dec. 4, 2007).  Where, as here, an inmate "has not alleged any facts to suggest that the laundry system caused him any harm rather than mere personal dissatisfaction with the frequency of the service," his claim is not actionable.  <u>Harrison v. Deen</u>, Civ. Action No. 06-cv-1198, 2008 WL 5435339, at *4 (W.D. La. Dec. 31, 2008).

Additionally, a negligent loss of an inmate's clothing by prison officials is not cognizable in a federal civil rights action if an adequate state remedy exists.  <u>Loftin v. Thomas</u>, 681 F.2d 364, 365 (5th Cir. 1982).  It is clear that "Louisiana provides an adequate tort postdeprivation remedy for procedural due-process claims relating to negligent or intentional property loss claims by inmates."

---

[10]    At the <u>Spears</u> hearings, Jackson stated that laundry service is now provided three or four times per week.  Pitt estimated that it is provided approximately once per week; however, he stated that he no longer uses the laundry service at all, opting instead to do his laundry in the showers.

Gross v. Normand, 576 Fed. App'x 318, 320 (5th Cir. 2014), cert. denied, 135 S. Ct. 1498 (2015). Therefore, plaintiffs' claims concerning the laundry's loss of their clothing must be brought in the state courts.

6.  Medical Care

Plaintiffs also complain about the quality of the medical care within the prison system.  All inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail; however, that right is a limited one which is violated only if the inmates' "serious medical needs" are met with "deliberate indifference" on the part of penal authorities.  See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).  Even if the plaintiffs in this case have "serious medical needs,"[11] which is unclear from the complaint, their allegations are nevertheless still insufficient to state a claim of deliberate indifference.

Regarding the "deliberate indifference" requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference.  Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.  Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment.

---

[11] The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

> And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001)  (quotation marks, brackets, and citations omitted).  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In the instant case, plaintiffs do not allege that the defendants have ignored their medical complaints; on the contrary, Pitt testified at the Spears hearings that he is provided medication for asthma, while Jackson noted that he has received Tylenol for pain resulting from a pre-existing injury.  There is likewise no allegation that the defendants have intentionally treated them incorrectly, and, although the medical care at the jail may well leave much to be desired, there is simply no requirement that an inmate's medical care be "the best money [can] buy."  Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); accord Gobert v. Caldwell, 463 F.3d 339, 349 (5th Cir. 2006) ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); McMahon v. Beard, 583 F.2d 172, 174 (5th Cir. 1978).  In fact, the federal constitution does not require even that an inmate's medical care be free from negligence or medical malpractice.  Hall v. Thomas, 190 F.3d 693, 697-98 (5th Cir. 1999); see also Kelly v. Gusman, Civ. Action No. 07-611, 2007 WL 2007992, at *4 (E.D. La. July 5, 2007); Cerna v. Texas Tech Medical Staff, No. 2:03-CV-0322, 2004 WL 42602, at *2 (N.D. Tex. Jan. 7, 2004).  Rather, claims of negligence or medical malpractice present issues of state law for state courts, not federal constitutional issues for a federal court.  See Estelle v. Gamble, 429 U.S. 97, 107 (1976); Coleman v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013).

12

In summary, the determinative issue is not whether plaintiffs' medical treatment is subpar in some respect, whether they have medical problems which persist despite treatment, or whether they are dissatisfied with their care; rather, it is only whether they have "serious medical needs" which have been met with "deliberate indifference."  There is simply no indication that they do.

### 7.  Rusty Dining Table

Plaintiffs next complain that their dining table was rusty, although Pitt acknowledges that the table has since been painted by the inmates.  In any event, this claim fails because the presence of rust in a jail does not rise to the level of a constitutional violation or otherwise warrant relief in a federal civil rights action.  See, e.g., Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *3 (E.D. La. Mar. 19, 2015); Simmons v. Gusman, Civ. Action No. 14-1907, 2015 WL 151113, at *4 (E.D. La. Jan. 12, 2015); Penn v. Jones, Civ. Action No. 13-0830, 2014 WL 31351, at *2 (W.D. La. Jan. 2, 2014).

### 8.  Unsanitary Conditions/Lack of Adequate Cleaning Supplies[12]

Plaintiffs also claim that the conditions within the Orleans Parish Prison system are unsanitary and that they are not given adequate cleaning supplies to combat the conditions.  For example, at the Spears hearings, they testified that inmates initially received cleaning supplies only two or three times per week, although they both noted that they now receive such supplies more frequently.

---

[12]   In the complaint, plaintiffs also reference a lack of "hygiene supplies"; however, at the Spears hearings, they clarified that they were referring to cleaning supplies.

The deplorable conditions within the Orleans Parish Prison are a matter of public knowledge and debate, and even the defendants surely would not argue with a straight face that the jail provides a clean and wholesome environment.  Nevertheless, it must be remembered that "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be."  McAllister v. Strain, Civ. Action No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); accord Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."). Although the undersigned is troubled by plaintiffs' allegations of the squalid conditions, there is no basis for relief in this case – their allegations, even if true, simply do not rise to a level which would violate the *minimal* standards required by the federal constitution.  See, e.g., Young v. Gusman, Civ. Action No. 12-2877, 2013 WL 4648478, at *9-11 (E.D. La. Jan. 23, 2013).  Similarly, their challenge to the adequacy of the prison's cleaning supplies likewise fails to state a cognizable claim. See id. at *11.

### 9.  Inadequate Grievance Procedure

Lastly, plaintiffs allege in their complaint that the prison grievance procedure is ineffective. Even if that it true, this claim should be dismissed because inmates have no constitutional right to an adequate and effective grievance procedure or to have their complaints investigated and resolved to their satisfaction.  Bonneville v. Basse, 536 Fed. App'x 502, 503 (5th Cir. 2013); Propes v. Mays, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); Davis v. St. Charles Parish Correctional Center, Civ. Action No. 10-98, 2010 WL 890980, at *5 (E.D. La. Mar. 8, 2010); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La.

Oct. 1, 2009); <u>Tyson v. Tanner</u>, Civ. Action No. 08-4599, 2009 WL 2883056, at *5 (E.D. La. Aug. 25, 2009); <u>Mahogany v. Miller</u>, Civ. Action No. 06-1870, 2006 WL 4041973, at *1 (E.D. La. Aug. 3, 2006), <u>appeal dismissed</u>, 252 Fed. App'x 593 (5th Cir. 2007).

In summary, the Court notes that it is not unsympathetic to plaintiffs' various complaints concerning the conditions of their confinement.  On the contrary, the Court has no doubt that the conditions within the Orleans Parish Prison system are uncomfortable, unpleasant, and fall far short of what should be demanded by a decent society.  However, for the reasons explained herein, that simply is not test – the only issue before the Court is whether the conditions are *unconstitutional*. The conditions alleged in this case, which result from ineptitude and/or lack of funds rather than from a punitive motive on the part of the jail officials, are lamentable but not unconstitutional.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that Jamal Bowe's claims be **DISMISSED WITHOUT PREJUDICE** for failure to prosecute.

It is **FURTHER RECOMMENDED** that the claims of Charles Pitt and Lee Kentrell Jackson be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

15

a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[13]

New Orleans, Louisiana, this twenty-first day of April, 2015.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[13]   <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.